JAP:EJM
F.#2005R01624

M07-0852

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

LAUREN WALKER-DIAZ,

    Defendant.

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR AN ARREST WARRANT

(T. 18, U.S.C., § 1344)

- - - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

    G. DALYNN BARKER, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

    Upon information and belief, in or about and between May 2005 and July 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LAUREN WALKER-DIAZ knowingly and willfully did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"), and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit: the defendant altered

1

signature cards and fabricated checks drawn on legitimate accounts at North Fork Bank ("North Fork"), without authority, and thereby obtained funds from those accounts, through fraud and deceit.

(Title 18, United States Code, Section 1344).

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I have been a Special Agent with the FBI for approximately two years. I am familiar with the facts and circumstances described herein from my personal participation in this investigation, information gathered by other law enforcement agents and civilian witnesses, my review of reports prepared by other law enforcement agents and my review of banking records. Except as explicitly set forth below, I have not distinguished herein between facts of which I have personal knowledge and facts of which I have hearsay knowledge.

## INVESTIGATION

2. Based on my conversations with personnel at North Fork, as well as my review of bank records, I have learned that LAUREN WALKER-DIAZ, the defendant, was employed as a teller by North Fork at the bank's Borough Park branch, located at 4612 13th Avenue in Brooklyn, New York. The defendant worked at this

---

[1] Because the purpose of this affidavit is merely to establish probable cause to arrest, I have not set forth all of the facts and circumstances of which I am aware.

2

North Fork branch from on or about February 7, 2005, through on or about June 3, 2005. I know from my experience as a Special Agent with the FBI that North Fork is insured by the FDIC. Based on interviews of an account holder ("John Doe"), as well as my review of bank records from North Fork and JP Morgan Chase ("Chase"), I learned the following information.

    a. <u>The John Doe Account</u>

        3. In or about May 2005, John Doe noticed that two checks written to "Cash" and signed with his name, had been drawn on his North Fork account. John Doe did not write these checks himself or authorize anyone else to. Moreover, John Doe had not ordered any checks for his North Fork account. One of the checks, check number 234, was written to "Cash" in the amount of $4,875 and was dated May 5, 2005. The other check, number 236, was written to "Cash" in the amount of $7,850 and dated May 17, 2005.

        4. Both checks, as furthered detailed below, were deposited by the defendant into a Chase account bearing her name, LAUREN R. WALKER-DIAZ. Check number 234 was deposited by the defendant into her account on May 10, 2005 and check number 236 was deposited by the defendant into her account on May 20, 2005. The defendant deposited both checks at the Chase branch located at 4901 13th Avenue, Brooklyn, New York.

    b. <u>The Development Company</u>

        5. Based on my interview of the general counsel of a

group of affiliated development companies (the "Development Company") and my review of North Fork and Citibank records and surveillance records, I have learned the following information.

6. The Development Company maintains a number of separate checking accounts for each of its subsidiaries at North Fork. The defendant, LAUREN WALKER-DIAZ, was never employed by the Development Company or authorized by the Development Company to sign checks on the Development Company's behalf or on behalf of any of its operating companies or subsidiaries or otherwise access any funds in any of its accounts.

7. On or about June 6, 2005, three checks were written to "Cash," each on a different operating account for the Development Company. The first check was payable in the amount of $50,000, the second in the amount of $25,000 and the third in the amount of $100,000. These were North Fork checks, imprinted with the appropriate routing and account numbers, but they contained a space at the top left corner of each check for the payer to fill in the account name and number. The Development Company does not have checks like this for any of its operating company accounts. The Development Company did not issue or authorize these checks and filed a "Forged Check Maker" affidavit with North Fork.

8. On or about June 6, 2005, all three checks were deposited by the defendant into a Citibank account bearing her name, LAUREN WALKER-DIAZ. The defendant deposited these checks

through a Citibank automated teller machine ("ATM") located in Brooklyn, New York. Citibank has surveillance photographs of someone I believe to be the defendant depositing the checks. Based on my review of Citibank records, I have learned that on or about July 10, 2003, the defendant opened a checking account in her own name, LAUREN WALKER-DIAZ, at the Citibank branch located at 717 Avenue of the Americas, New York, New York.

9. North Fork stopped the check payable for $25,000 and the check payable for $100,000 without crediting LAUREN WALKER-DIAZ's Citibank account. The $50,000 check was processed and credited to LAUREN WALKER-DIAZ's Citibank account. At the time of the deposit, the balance in the defendant's Citibank account was ($4.54). On or about August 31, 2005, Citibank closed LAUREN WALKER-DIAZ's account.

10. I learned through my interviews with general counsel at the Development Company and North Fork personnel, as well as through my review of North Fork and Chase records, that in or about the Summer of 2005, signature cards for several of the operating company accounts of the Development Company were altered. Specifically, the defendant's own name, LAUREN WALKER-DIAZ, or a shortened version of her own name, LAUREN DIAZ, and signature, were added to the signature card, so that it appeared she was authorized to write checks on certain operating company accounts. North Fork's official signature cards on file for those operating company accounts, located at 877 Stewart Avenue,

5

Garden City, New York, do not reflect LAUREN WALKER-DIAZ or LAUREN DIAZ as a signatory.

11. On or about June 27, 2005 LAUREN WALKER-DIAZ presented a withdrawal slip in the amount of $65,000 at a North Fork Bank located in Flatbush, Brooklyn, drawn from the account of one of the operating companies. North Fork has surveillance photographs of someone I believe to be the defendant presenting the withdrawal slip. In exchange for the withdrawal slip, the bank provided the defendant with a cashier's check in the same amount, listing "L. Diaz, Esq" as the payee. The North Fork branch relied an altered signature card, referred to above, to process the transaction.

12. On or about June 27, 2005, LAUREN WALKER-DIAZ deposited the cashier's check for $65,000 into her Chase account at the Chase branch located at 883 Flatbush Avenue in Brooklyn, New York. Prior to this transaction, defendant's account balance had been $17.80.

13. Based on my interviews of employees at an automobile dealership in Brooklyn, New York (the "Auto Mall") and my review of Chase bank and New York State Department of Motor vehicle records, I have learned the following.

14. On or about June 29, 2005, LAUREN WALKER-DIAZ obtained a cashier's check in the amount of $44,000, drawn on her Chase account, payable to the Auto Mall. The Auto Mall is a large automobile dealership, located in Brooklyn, New York. On or

6

about June 29, 2005, defendant obtained title to a 2005 GMC Yukon Denali 4WD, which she subsequently registered in her name.

15. On or about July 25, 2005, LAUREN WALKER-DIAZ presented a withdrawal slip in the amount of $86,500 at a North Fork Bank located in Brooklyn, drawn from an account of one of the operating companies. North Fork has surveillance photographs of someone I believe to be the defendant presenting the withdrawal slip. In exchange, the bank provided WALKER-DIAZ with two cashier's checks: one in the amount of $30,000 payable to "A. Green," one in the amount of $50,000 payable to "L. Diaz" and cash in the amount of $6,500. The North Fork branch relied on the altered signature card, referred to above, to process the transaction. North Fork's official signature card on file for this operating company account, located at 877 Stewart Avenue, Garden City, New York, does not reflect LAUREN WALKER-DIAZ or LAUREN DIAZ as a signatory.

16. Based on my interviews of North Fork Bank personnel, as well as my review of North Fork Bank records, I have learned that on or about July 29, 2005, LAUREN WALKER-DIAZ presented a withdrawal slip in the amount of $12,500, drawn from an account of one of the operating companies of the Development Company, at a North Fork branch located at 2123 Avenue U, Brooklyn, New York. Based on a "teller alert" that had been issued by North Fork, the teller to whom the withdrawal slip was

submitted did not process the request, and instead notified the New York City Police Department ("NYPD").

17. Based on my conversations with officers from the NYPD and my review of police records, I have learned that defendant LAUREN WALKER-DIAZ was arrested on July 29, 2005, at the North Fork branch located at 2123 Avenue U in Brooklyn. In her possession at the time was (1) the North Fork withdrawal slip dated July 29, 2005, in the amount of $12,500, (2) the July 25, 2005 cashier's check payable to "A. Green" in the amount of $30,000, and (3) the July 25, 2005 cashier's check payable to "L. Diaz" in the amount of $50,000.

WHEREFORE, your deponent respectfully requests that the defendant LAUREN WALKER-DIAZ be dealt with according to law.

_____
G. DALYNN BARKER
Special Agent
Federal Bureau of Investigation


Sworn to before me this
31st day of July, 2007

_____
UI                    ATE JUDGE
E.                    EW YORK

8